## BIER *v.* McGEHEE.

ERROR TO THE COURT OF APPEALS FOR THE PARISH OF ORLEANS
AND STATE OF LOUISIANA.

No. 1254.  Submitted February 6, 1893. — Decided March 13, 1893.

After the adoption of Article 233 of the constitution of Louisiana, declaring certain designated state bonds void, the Treasurer of that State fraudulently put them into circulation, and absconded. Payment having been refused by the State to an innocent holder of such a bond,     h he had purchased for value, *Held*, in a suit brought by him to recover back the purchase money, that such refusal by the State raised no Federal question.

This was a motion to dismiss a writ of error upon the ground that no Federal question was involved.

Suit was begun by a petition filed by McGehee in the civil district court of the parish of Orleans, December 10, 1889, setting forth that in May, 1888, petitioner had purchased of defendant Bier a certain state bond numbered 788, "denominated and represented to be a consolidated bond of the State of Louisiana," for the sum of $1000, issued January 1, 1874, under authority of act number 3 of the state legislature of 1874. That after the purchase of said bond and payment therefor, it was claimed by the State of Louisiana, through the attorney general, as its property, and that it had been stolen by one Burke from the state treasurer, and the return of said bond with $60 received in payment of the coupons attached thereto was demanded by the attorney general. The petitioner further averred that the bond was purchased by him under the full belief that Bier was the lawful owner thereof, but that he was not at the time of the sale by him, or since, the owner thereof, and that he had good reason to believe and so charged that the bond was then the lawful property of the State of Louisiana, and part of the Mechanical and Agricultural College fund held by the State; that said bond was worthless in his hands; that the defendant refused to repay the purchase price. He prayed for a judgment rescinding the sale of the bond, and that the defendant be condemned to take back the same, and return the amount paid therefor.

Defendant, in his supplemental answer, denied that he was ever the holder of the bond, or that he had ever sold the same to the plaintiff; and averred that he had never purchased or acquired any such bond that was not acquired in good faith, in open market, before maturity, in the due and regular course of trade, as commercial paper; and that any law of the State of Louisiana supposed to affect or alter the contract contained in the consolidated bonds of the State, issued under the act of 1874, was repugnant to the Constitution of the United States.

Upon the trial it was proved, and not denied by Bier, that he had purchased the bond after the adoption of the constitu-

tion of the State in 1879. The state treasurer's report of 1879 was put in evidence to show that the State was the owner of the bond at that time. The court decreed that the sale of the bond be rescinded, and that the defendant Bier be compelled to take back the bond, with the coupons attached, and the sum of $60, received for the coupons paid in error, etc. Defendant appealed to the Court of Appeals of the Parish of Orleans, which affirmed the judgment, and thereupon he sued out a writ of error from this court, which defendant in error, McGehee, moved to dismiss.

*Mr. Frank L. Richardson* for the motion.

*Mr. Henry L. Lazarus* opposing.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

Plaintiff in error invokes the jurisdiction of this court upon the ground that article 233 of the constitution of the State of Louisiana, which declared that the consolidated bonds of the State, held for the Agricultural and Mechanical College and the Louisiana Seminary fund, were null and void, was repugnant to section 10, Article I, of the Constitution of the United States, prohibiting States from passing laws impairing the obligation of contracts.

The article in question declares the debt due by the State to the agricultural and mechanical fund to be $182,313.03, being the proceeds of the sales of lands and land scrip granted by the United States to the State for the use of a college for the benefit of agriculture and the mechanical arts; directs that said amounts shall be placed to the credit of said fund on the books of the auditor and treasurer as a perpetual loan; that the State shall pay an annual interest of five per cent on said amount from January 1, 1880, for the use of said college; and that the consolidated bonds of the State, then held by the State for the use of said fund, were to be null and void after January 1, 1880, "and the general assembly shall never make any provision for their payment, and

they shall be destroyed in such manner as the General Assembly may direct."

That the constitution of a State is a *law* of the State within the meaning of the Constitution of the United States, prohibiting States from passing laws impairing the obligation of contracts, is not denied, and the plaintiff in error assumed the position that it is beyond the power of the State to annul or cancel bonds outstanding and presumably in the hands of *bona fide* purchasers. If Bier had been a holder for value of this bond when the constitution of 1879 was adopted, it would evidently be beyond the power of the State, by act of the legislature, or by an amendment to its constitution, to nullify such bond in his hands. But if, when the constitutional amendment was adopted, the bond was still in the possession of the State, there was then no contract with Bier upon which such amendment could operate, and hence no contract subject to impairment. *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79. There was no objection to the State declaring bonds still in its possession to be null and void. The amendment was practically an inhibition against issuing bonds of the State for a certain purpose.

The court found that there was no material difference between the facts of this case and those of a prior case against the same defendant, arising from the purchase of another of the same issue of bonds, and, in its opinion in such prior case, (*Aycock* v. *Lee*,) the Court of Appeals of Orleans held that it would take judicial notice of the fact that the bonds, while in the possession of one Burke, then treasurer of the State, had become and were null and void by the operation and effect of article 233 of the constitution; and that Burke, having fraudulently reissued and put such bonds in circulation, absconded from the State, and became and still was a fugitive from justice. The court further found that defendants received from the plaintiff $913.75 for a paper represented to be a consolidated bond of the State, which the State had declared to be null and void, and which was the lawful property of the State, and that defendants were never owners of said bond; that plaintiff did not know such facts when he purchased; and that

said bond was valueless in his hands. The court further found that these bonds were never put in circulation by the State, but that, while they were held by the State in trust for the use of the Agricultural and Mechanical College fund, they were annulled by the constitution of 1879, and their destruction ordered ; that the claim made that innocent holders were entitled to exemption from inquiry into the equities between the original parties was wholly inapplicable to these bonds, which never were issued and put in circulation by the State ; that there was no equitable estoppel against the State, from the fact that the General Assembly failed to have the bond destroyed as required by the constitution, or from the fact that coupons attached to it were paid from the state funds set apart for the payment of the interest on the state debt; and that the negligence of the General Assembly, the crime of the state treasurer, and the erroneous payment of said coupons could not singly or operating together give validity to the bonds whose nullity had been declared, and whose destruction had been ordered. The court further held that what the plaintiff covenanted to purchase and what defendants covenanted to sell was a legal bond of the State ; that there was an implied warranty on their part that the bond belonged to them, and that it was a genuine legally outstanding and negotiable bond of the State ; that what the plaintiff received was a bond of no validity; and that "for this error of fact and of law as well regarding the essential quality of the bond sold, and without which plaintiff would not have purchased it, the contract may be rescinded."

It is quite evident from this statement that there was no Federal question involved in the case. The only such question which could possibly have arisen related to the power of the State to annul by constitutional amendment its own obligations; but that could only be raised upon the theory that the obligation had been put in circulation, and that there was a contract on the part of the State to pay the holders. If the bonds were still in possession of the State, (and the court found that they were,) there was no contract to be impaired. The real questions involved were, whether the bonds which

had been stolen by the former treasurer were valid obligations of the State in the hands of McGehee, the plaintiff; and, secondly, whether the defendant Bier was liable for money received by him upon a consideration which had failed.

In the case of *Sage* v. *Louisiana*, 144 U. S. 647, 650, it was said by this court, speaking of this same issue of bonds, that the Supreme Court of Louisiana had decided "that the governor, as the chief executive officer of the State, had no power whatever to deal with those bonds or to dispose of them, except in the precise manner and for the distinct purpose pointed out by the law; and that any act of his in contravention of its provisions in that regard would be void, and could not confer on any person or holder of the bonds a right to recover them or to enforce their liquidation or payment." This decision was held not to have raised a Federal question, and the writ of error was dismissed.

It is true that article 233 did not identify the bonds beyond describing them as "the consolidated bonds of the State for the use of the said fund," (agricultural and mechanical,) but the treasurer, in whose possession they were, could not fail to know what bonds were intended; and whether such bonds, subsequently stolen by him and put in circulation, were, though not identified as belonging to this fund, valid obligations of the State, in the hands of innocent holders, was not a Federal question.

The writ of error will, therefore, be

*Dismissed.*